# United States Court of Appeals
## For the First Circuit

No. 00-1309

ZOILO VELAZQUEZ-RIVERA,

Plaintiff, Appellant,

v.

RICHARD J. DANZIG, SECRETARY OF THE NAVY,
ISRAEL PAGAN, DIRECTOR OF HUMAN RESOURCES OFFICE,
EFRAIN FELICIANO, PEDRO AYALA, AND BIENVENIDO BURGOS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Boudin, Circuit Judge.

Gino Negretti-Lavergne for appellant.
Lilliam Mendoza-Toro, Assistant U.S. Attorney, with whom
Guillermo Gil, United States Attorney, and Miguel A. Fernandez,
Assistant U.S. Attorney, were on brief for appellee.

December 19, 2000

**COFFIN, Senior Circuit Judge.** This appeal caps an elongated, unhappy saga leading up to and including the termination of appellant's employment by the U.S. Navy in Vieques, Puerto Rico. Appellant, a civilian Navy firefighter, brought suit in federal court against the Secretary of the Navy, and his former superiors at Roosevelt Roads Naval Station in Ceiba, Puerto Rico, and on the nearby island of Vieques.[1] After a history of injuries sustained by appellant and various efforts to accommodate him in a more restricted capacity, the Navy finally terminated his employment.

Appellant alleged, as the district court interpreted the complaint, violations of the Rehabilitation Act, 29 U.S.C. §§ 702-794(a), the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a(c), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c), and 42 U.S.C. § 1983 (due process rights). Also included were invocations of the federal Constitution and certain labor laws of Puerto Rico. The gravamen of the claims involved discriminatory action based on disability, age, and retaliation.

---

[1] The named defendants are Richard J. Danzig, Secretary of the Navy; Ismael Pagan, Director of Human Resources at Roosevelt Roads Naval Air Station (RRNAS), Ceiba, Puerto Rico; Efrain Feliciano, Supervisor of the Fire Fighting Department of RRNAS; Bienvenido Burgos, Fire Chief, Air Operations, Fire Division of RRNAS; and Pedro Ayala, Lead Firefighter, Air Operations, Fire Division, Vieques, Puerto Rico.

The district court granted summary judgment for defendants on all claims. We conclude that all but one of its rulings were solidly based in fact and in law; one claim based on

appellant's final termination, alleging discrimination because of his disability, merits further exploration.

**FACTUAL BACKGROUND**

Despite an appendix of nearly a thousand pages, the essential facts may be briefly stated, leaving further details to the discussion of the several issues. Appellant, a 55-year-old man who worked for the Navy since 1967, was a firefighter at the Navy's air facility on Vieques since 1988. In 1994, he suffered an injury to his left knee and, after surgery, was assigned to temporary light duty as a Fire Communications Operator. In 1995, appellant sustained further injury to his knee. Upon evaluation, he was found to be unable to perform a firefighter's duties and was offered a job as a Tools and Parts Attendant at his previous pay level. While considering this offer, he had a third accident involving the same knee. Appellant subsequently refused the offer, saying that the Tools and Parts Attendant job called for physical activities, such as climbing, lifting, and kneeling, that exceeded conditions prescribed by his doctor.

Appellant was removed from his job on June 24, 1996, and appealed this action to the Merit Systems Protection Board (MSPB). Although unlawful discrimination was not explicitly raised, he did say that he was fired as a result of his injury. On January 30, 1997, the MSPB dismissed his appeal as untimely. Although advised of his rights, appellant did not appeal this action to the Court of Appeals for the Federal Circuit, which has exclusive jurisdiction to hear such appeals from the MSPB. See 5 U.S.C. § 7703(b)(1).

Shortly thereafter, on April 11, 1997, the Navy offered appellant a permanent job as a Fire Communications Operator on Vieques, which he accepted. According to the Department of Labor, which was paying him benefits under the Federal Employees' Compensation Act (FECA), appellant had no choice but to take the job or risk losing his right to further compensation. See 5 U.S.C. § 8106(c)(2) ("A partially disabled employee who . . . refuses or neglects to work after suitable work is offered to, procured by, or secured for him is not entitled to compensation.").

What happened next is not clear. We do know that a meeting, involving appellant, his counsel, and Navy personnel, occurred on May 5 at which the particulars of the new position were discussed. We also know that appellant reported for work

a week later, on May 12, but was told to leave a few hours later. Following his termination, appellant brought the instant action in January 1999. Because the record is not clear on precisely what happened preceding his termination, we must remand for further factual development.

**ANALYSIS**

We divide our analysis into two sections. In the first, we discuss briefly a number of issues as to which we are in agreement with the district court's analysis and conclusions. In the second, we address in some detail the issue that cannot be resolved without further proceedings.

## I.  SECONDARY ISSUES

### A.  Rulings on Discovery and Conversion of Motion to Dismiss

Appellant assigns as error the court's conversion of a motion to dismiss, filed by defendants, into a motion for summary judgment.  He buttresses his argument by asserting that he was denied discovery of documents vital to his case.

Defendants filed their motion to dismiss, memorandum of law, and attachments in a document occupying 181 pages. Plaintiff-appellant filed his opposition, memorandum of law, which included a section entitled "Standard Applicable to Motion for Summary Judgment," and some 76 documents in a 455-page submission. Noting that matters outside the pleadings were submitted by both sides, the district court properly converted defendants' motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b).  See, e.g., Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 18-19 (1st Cir. 1992).

Appellant's own submission to the court, in a Rule 60(b) motion, undermines his contention that he was prejudiced by the inability to continue discovery.  He sought relief from judgment based on an item in an allegedly newly discovered Naval Inspection File, which concerned thirteen asserted occasions of harassment against him.  A Navy inspector had found twelve of

the harassment allegations to be unsubstantiated. Appellant claimed prejudice from being deprived of the thirteenth finding that, although plaintiff's doctor had indicated that plaintiff was not to work from September 9, 1995, to October 18, 1995, he was improperly ordered back to work on October 18. It should not be necessary to say that this claim is transparently thin.

B.   The June 1996 Termination

The district court properly ruled that any claim of a civil service nature resulting from appellant's termination from the firefighter position had been forfeited by his failure to appeal the MSPB's decision to the Court of Appeals for the Federal Circuit. See 5 U.S.C. § 7703(b)(1). It was also correct in holding that, even if appellant's claim was not solely of a civil service nature, but included a discrimination claim, then administrative remedies had not been exhausted, since there had been no contact with an Equal Employment Opportunity Commission (EEOC) counselor within 45 days, as required by 29 C.F.R. § 1614.105(a)(1). See, e.g., Roman-Martinez v. Runyon, 100 F.3d 213, 216-18 (1st Cir. 1996) (holding that a federal employee's failure to contact an EEOC counselor within the limitations period causes him to lose his right to pursue a later de novo action in court).

Appellant attempts to revive his unexhausted discrimination claim by alleging a continuous pattern of discrimination prior to his termination, arguing that the limitation period is therefore extended. As the district court correctly noted, however, even where such continuing violations are of the type we have recognized as tolling the limitations period, that would excuse only an untimely filing, not the failure to exhaust an administrative requirement. In any event, the alleged pattern was not the type of serial or systemic violation that we have recognized as amounting to a continuing violation. See, e.g., Andreu v. Banco Bilbao Vizcaya, No. 00-1483, slip op. at 2-3 (1st Cir. Dec. 1, 2000). The district court found that the alleged continuing pattern, which included false accusations and assigning extraneous duties, such as washing and waxing vehicles, was nothing more than discrete instances of harassment that did not relieve appellant of the duty to file within the prescribed period. We therefore affirm the court's rejection of the applicability of the continuing violation theory.

C.  The May 1997 Termination

Appellant also pressed several claims attendant to his second termination on May 12, 1997, from the Fire Communications Operator position. We uphold the district court's dismissal of

-9-

these claims, with the exception of the disability claim discussed in Part II infra.

1. Age Discrimination Claim. Appellant initiated an administrative ADEA claim on May 13, 1997, by filing with the Navy's EEOC counselor a "pre-complaint" letter that alleged discrimination only on account of his physical handicap. On July 24, he filed a formal complaint, checking both age and physical handicap on the preprinted government form. In the four page letter accompanying the form, however, there is no mention of any age-related conduct or statement. In a later report, the EEOC counselor confirmed that "[d]uring the informal counseling stage complainant did not define age as a basis for discrimination." By not bringing his age discrimination claim to the attention of the EEOC, he foreclosed the administrative investigation and ameliorative action contemplated by the exhaustion requirement. The district court's reasoning and citations of authority adequately support its ruling that any ADEA claim failed for lack of exhaustion of administrative remedies.

2. Retaliation Claim. Appellant seems to have claimed that his termination was due, in part, to retaliation for filing the complaint with the Navy's Inspector General. But he neither checked "Reprisal" on the EEOC form, nor alluded to the subject

-10-

in his administrative complaint. For the same reason that his ADEA claim remains unexhausted, appellant's retaliation claim is forfeited. The court's ruling was obviously correct.

3. <u>Section</u> <u>1983</u> <u>Claim</u>. The court properly held the § 1983 claim time-barred, applying to the allegations of a constitutional tort the appropriate one year statute of limitations. <u>See</u> 31 P.R. Laws Ann. § 5298; <u>see also</u> <u>Carreras-Rosa</u> v. <u>Alves-Cruz</u>, 127 F.3d 172, 174 (1st Cir. 1997) (recognizing the rule from <u>Wilson</u> v. <u>Garcia</u>, 471 U.S. 261, 278-80 (1985), that the limitations period for filing § 1983 claims is governed by the applicable state statute of limitations for personal injury actions, which is one year in Puerto Rico). Since the relevant events occurred in May 1997 and the complaint was not filed until January 1999, the claim was time-barred.

4. <u>Pendent</u> <u>State</u> <u>Law</u> <u>Claims</u>. Finally, the district court ruled that the only proper party defendant in this case is the Secretary of the Navy, as he is the "head of the department, agency or unit" asserted to be the source of the grievance. 42 U.S.C. § 2000c-16(c). This being so, the court dismissed the pendent claims, not only because it had dismissed the federal claims, but also because the suit is against the United States,

-11-

which has not waived its sovereign immunity for suits under Puerto Rico's laws. We see no error in this ruling.

### II. PRINCIPAL ISSUE: THE MAY 1977 TERMINATION – THE DISABILITY CLAIM

We now come to the major issue in this case: whether there was a genuine issue of material fact regarding appellant's ability and willingness to perform the essential functions of the Fire Communications Operator position.

Appellant bears the burden on three elements of his claim for employment discrimination based on disability: (1) that he was disabled, (2) that despite his disability, he was able to perform the essential functions of the job, either with or without reasonable accommodation, and (3) that his employer discharged him because of that disability. <u>Oliveras-Sifre</u> v. <u>Puerto Rico Dep't of Health</u>, 214 F.3d 23, 25 (1st. Cir. 2000) (citing <u>Feliciano</u> v. <u>Rhode Island</u>, 160 F.3d 780, 784 (1st Cir. 1998)). Because the parties concede that appellant was disabled within the meaning of the Act, we proceed to the second element – whether appellant was able to perform the essential functions of the job such that he was a "qualified person with a disability." 42 U.S.C. § 12111(8).[2]

---

[2] Because the district court found that appellant was not a qualified individual with a disability, it did not reach the third element of the prima facie case. Nor do we. Although we may affirm the entry of summary judgment on any sufficient

-12-

The district court found this issue also to be uncontested, leading it to grant judgment for defendants. It held as a matter of law that, because "it [wa]s uncontested that Plaintiff could not perform the essential duties of the job offered to him," appellant was not a "qualified individual with a disability," as those terms are defined in the Rehabilitation Act. 42 U.S.C. § 12111(8) ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."); see also 29 U.S.C. § 794(d) (incorporating into the Rehabilitation Act standards from the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111); Oliveras-Sifre, 214 F.3d at 25 n.2 (recognizing same).

Our review of the record, however, reveals two disputed issues material to the determination of whether appellant was a qualified individual with a disability: (i) what were the essential functions of a Fire Communications Operator; and (ii) was appellant able and willing to perform these essential

_____

ground revealed by the record, Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000), we leave that determination in the first instance to the district court on remand. Of course, if appellee, the moving party below, shows that appellant has not met his burden on that element, then summary judgment may reissue in its favor.

functions of the job?  See Garcia-Alaya v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000) ("In order to be a qualified individual under the Act, the burden is on the employee to show: first, that she possesses the requisite skill, experience, education and other job-related requirements for the position, and second, that she is able to perform the essential functions of the position with or without reasonable accommodation.") (internal quotation marks and footnote omitted).

Because the answers to these questions are not discernible from the record, which we review below, we must remand.

- On March 19, 1997, a message was sent from the Office of Workers' Compensation Programs (OWCP) to the Human Resources Office (HRO) of the Navy at Roosevelt Roads, stating that appellant was cleared for "limited duty (permanent?)" and asking for a job offer.

- On April 9, HRO forwarded to OWCP a job offer for appellant as a Fire Communications Officer on Vieques.  The record contains a 1994 evaluation of the position, listing requirements of the job, without noting whether the position was temporary or permanent.  It carried a certificate, signed by the Fire Chief, that the position was necessary.  By 1995, the six

page itemization of duties contained a typed-in list on the cover sheet of "Other Duties Assigned," which included: "perform mail runs, issue hot work permits for hazardous operations, perform fire prevention inspections, support operational training activities."

- By a letter dated April 11, 1997, the Navy offered appellant the position of Fire Communications Operator on Vieques, stating that it had received medical information that "indicates you can perform the duties of another position with lesser physical requirements than your previous position of firefighter."

- On April 16, appellant's counsel wrote back, accepting the offer, but reserving his claim of discriminatory conduct. He requested a meeting to explore settlement.

- By a letter dated April 17, 1997, the OWCP reminded appellant that if he refused to accept a suitable position, then his right to further compensation under the FECA would be jeopardized.

- On April 18, appellant signed the Navy's acceptance form.

- On May 5, a meeting took place with Navy and OWCP officials, appellant, and his attorney. On that same day, the Navy's Human Resources Director wrote the Vieques Navy Air Operations Officer that the Fire Communications Operator

position at Vieques had been offered to, and accepted by, appellant. The letter also noted: "The amendment on the cover sheet of the Position Description citing other duties assigned has been deleted." The letter recommended that various steps be taken to facilitate appellant's return to duty, including providing him with a description of his position and performance standards and "[p]roviding him with the welcoming and acceptance one would give to any other employee who arrives at the work site for the first time."

- On May 12, appellant reported for work. What happened from this point on is the subject of radically different accounts by appellant and his supervisor, Efrain Feliciano. Feliciano prepared a "Statement for the Record" on May 12, in which he wrote: "Discussed position description with him before he started to work. Position description does not completely describe duties and responsibilities of the position." Feliciano also reported that appellant had come inappropriately attired in a firefighter polo shirt, shorts and tennis shoes, and he was carrying a personal tape recorder. Although appellant arrived with a cane, on leaving the premises, he left the cane behind. At some later date, apparently in July, Feliciano added, in an affidavit, that (1) there was no permanent Fire Communications Operator position on Vieques; (2)

-16-

he told appellant to change his clothes to start working, and appellant refused; and (3) he discussed the position description and appellant said that he could not perform most of the duties.

Appellant's version, from his "Statement of Uncontested Facts," differed from Feliciano's in five particulars: (1) the Navy's Human Resources Officer had told him that he did not have to wear a uniform; (2) when he reported for work, he was not provided with a copy of the position description, but was told that he knew the position and was commanded to start working; (3) he was able to perform the required tasks and at no time said that he could not do the job; (4) after working four hours, he was sent home without an explanation; and (5) at no time did Feliciano say that the position was not permanent.

- Following May 12, a further effort was made to assign appellant to a Fire Communications Operator position on the main island of Puerto Rico, but travel and work schedules made the assignment infeasible.

- Three months later, on August 25, 1997, the Navy's EEOC Counselor prepared a report, which noted that appellant, OWCP, and the Navy had agreed to modifications of the Fire Communications Operator position to accommodate appellant's physical abilities. Nothing was noted about the events of May

concerning appellant's termination.  In a section later added
to the report, the counselor wrote:

> A further review of this offer was made by the HRO
> which revealed that although the complainant had
> performed the duties of this position in the past they
> were not of a permanent nature and were not a
> requirement of the Fire Department in Vieques.  The
> complainant was allowed to perform these duties on a
> temporary basis only.  Based on this discovery, the
> offer was not considered valid and the HRO was
> compelled to explore the possibility of extending the
> offer to the complainant but at the U.S. Naval
> Station, Roosevelt Roads.

This review of the relevant parts of the record reveals
a clear cut dispute between the parties over the critical
question whether, as under appellee's version of events,
appellant was unable or refused to perform the duties of a Fire
Communications Operator as modified, or whether, as appellant
contests, he worked for several hours and was then terminated
without explanation.  Under a section summarizing plaintiff's
allegations, the district court took note of appellant's version
of events:

> Plaintiff struck a deal and several responsibilities
> were eliminated from the position of Fire
> Communications Operator.  Plaintiff accepted the
> position and returned to work on May 12, 1997.  On the
> day of his return, however, Plaintiff was sent home
> without any explanation after working approximately
> four hours.  The Human Resources Department refused to
> answer Plaintiff's questions about his termination.

The court's subsequent opinion, however, reveals that it
impermissibly resolved the disputed versions of the events on

-18-

May 12 when it mis-characterized the issue as "uncontested." This it could not do. See, e.g., Burns v. State Police Ass'n of Massachusetts, 230 F.3d 8, 9 (1st Cir. 2000) (reiterating the well-settled summary judgment rule that courts are obliged to view the facts, and all reasonable inferences drawn from them, in the light most favorable to the nonmoving party).

Our review of the record demonstrates that, if true, appellant's version of events sufficed to show he was a qualified individual with a disability who was able to perform the essential functions of the position. The dispute over that issue, therefore, is material to appellant's cause of action and cannot be resolved as a matter of law based on this record. As we have already noted, it remains for the district court to determine on remand whether appellant has carried his burden on the third element of his ADA claim -- that he was discharged because of his disability -- to survive summary judgment. If so, then the issue regarding the second element -- whether appellant was able and willing to perform the essential functions of the job -- must be resolved by a fact finder.

We therefore affirm the ruling in favor of defendants on all claims except appellant's Rehabilitation Act claim related to the 1997 termination. We vacate the judgment on that

issue and remand to the district court for further proceedings in accordance with this opinion.

<u>Affirmed in part, vacated in part, remanded for further proceedings.</u>  Appellant to have one half of his costs.