# United States Court of Appeals

## For the First Circuit

No. 01-2658

ROBERT MILLER,

Plaintiff, Appellant,

v.

NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

Michael J. Sheehan for appellant.
Nancy J. Smith, Senior Assistant Attorney General, with whom
Philip T. McLaughlin, Attorney General, was on brief, for appellee.

July 16, 2002

**LIPEZ, Circuit Judge**. Robert Miller filed suit against the New Hampshire Department of Corrections ("DOC"), claiming that his superiors at the New Hampshire State Prison retaliated against him for engaging in protected conduct, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Specifically, Miller maintained that he was disciplined, denied positions for which he was qualified, and constructively discharged after he supported one of his subordinates in her sexual harassment claim. The DOC moved for summary judgment on the grounds that many of the events Miller complained of fell outside Title VII's 300-day statute of limitations; that the events within the limitations period were insufficient to support Miller's claim of constructive discharge; and that Miller failed to show that the DOC was motivated by discriminatory animus when it refused to promote him or transfer him to a new position.

The district court granted the motion and entered judgment for the DOC. The court reasoned, first, that Miller could not recover for alleged retaliation that occurred outside the statute of limitations. It then concluded that the more recent events were either not discriminatory, or too trivial to amount to a constructive discharge. See Miller v. N.H. Dep't of Corrections, Civ. No. 99-522-M, slip op. at 34-63 (D.N.H. Nov. 13, 2001) (unpublished).

We believe the district court analyzed the issues correctly. As we have explained elsewhere, "when a trial court accurately takes the measure of a case and articulates its

-2-

rationale clearly and convincingly, an appellate court should refrain from writing at length to no other end than to hear its own words resonate." Cruz-Ramos v. P.R. Sun Oil Co., 202 F.3d 381, 383 (1st Cir. 2000) (internal quotation marks omitted). We apply that tenet here, and affirm largely on the basis of the district court's thorough and well-reasoned opinion. In light of the recent decision of the Supreme Court in National Railroad Passenger Corp. v. Morgan, 122 S. Ct. 2061 (2002), however, we add the following comments on the statute of limitations issue.

## I.

The district court described the underlying facts in detail. See Miller, slip op. at 4-32. We offer an abbreviated account here. In 1995, Miller served as the unit manager of the Hancock Unit at the New Hampshire State Prison. Among his subordinates were Officers Sherri White and Tab Colby. In the fall of 1995, Miller heard from a third party that Colby had told other officers that White had engaged in oral sex with one of the inmates. Miller passed that information along to White, who (with Miller's assistance) filed an internal complaint of sexual harassment on November 3, 1995.

On November 15, 1995, the DOC's Administrator of Security issued a report sharply criticizing Miller's management of the Hancock Unit and urging that he be transferred elsewhere. A second report -- which summarized the DOC investigation of White's complaint -- also faulted Miller for his "lack of leadership in directing his employees in maintaining professionalism in

respecting their fellow co-workers." The latter report recommended that Miller be disciplined.

As a result of the two reports, Miller was transferred to the Reception and Diagnostic Unit in December of 1995. Moreover, Miller's annual evaluation, issued in March of 1996, concluded that his performance the previous year had fallen "below expectations." Shortly thereafter, Miller received an official letter of warning. The letter stated that "[y]our poor judgment in dealing with your subordinate staff impacted the effective operations of the [Hancock] Unit and created dissention [sic], shift bashing and jealousy amongst staff; resulting in sexual rumors," and admonished Miller to take "immediate corrective action."

Concerned by what he viewed as unfair criticism, Miller appealed the 1996 letter of warning. In a March, 1996, memorandum to the Commissioner of the DOC, Miller argued: "I am being used as a scapegoat and retaliated against because I reported [Colby's] misconduct, mishandling of the investigation [into White's charges] and continued pollution of the environment." Miller reiterated that sentiment in a second memorandum, stating: "I feel abused and retaliated against. . . . I am again asking for a thorough investigation of the environment and retaliation."

Unpersuaded, the commissioner denied the appeal in August of 1996. Some time later, Miller learned that White had lied to him about certain matters related to her complaint. Accordingly, he chose not to pursue the next step in the appeals process -- taking the matter to the Personnel Appeals Board.

According to Miller's deposition testimony, he "was treated very well" from August of 1996 until some time in late 1998. Miller claims that three things happened in 1998 and 1999 that triggered a new round of retaliation. First, he renewed his efforts to get the 1996 letter of warning removed from his file. Second, he learned for the first time that Colby had lied during the DOC's investigation into White's harassment charges. Miller was furious that he had not been informed of Colby's deceit, and made his views known to his superiors at the prison. Finally, Miller testified in White's Title VII trial in January of 1999.

Miller points to several instances of alleged retaliation in 1998 and 1999. For our purposes, it is sufficient to focus on one. In early 1999, Miller applied for a probation and parole officer ("PPO") position. Of the 13 candidates interviewed, Miller had the third-highest score on the oral interview and the highest overall score (the combination of the oral score and a "factor" score based on seniority and past performance). The position was offered to the applicant with the highest score on the interview, but the eleventh-highest overall score. Miller believes he was denied the job because of his protected conduct in disclosing the alleged sexual harassment of White.

## II.

Miller filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in March of 1999, claiming that he had been subjected to unlawful retaliation beginning in December of 1995. In due course, he filed suit in

district court, again complaining of retaliation beginning with the 1995 transfer to the Reception and Diagnostic Unit.  The DOC moved for summary judgment on the ground that, inter alia, Miller's claims with respect to retaliation in 1995 and 1996 were time-barred.

Under Title VII, 42 U.S.C. § 2000e-5(e), Miller was obligated to file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred."[1]  Miller filed his charge on March 22, 1999.  Thus, he can recover for events occurring during the previous 300 days; that is, on or after May 22, 1998.

Miller argues, however, that the "continuing violation doctrine" allows him to reach back to events in 1995 and 1996 (the transfer to the Reception and Diagnostic Unit, the negative evaluation, and the letter of warning) because those events were related to the allegedly retaliatory acts that occurred within the limitations period.  The district court rejected that claim on the ground that Miller believed he was being discriminated against at the time that the early (now time barred) events occurred.  Thus, applying our pre-Morgan precedents, the court concluded that Miller

---

[1] Section 2000e-5 sets out a general limitations period of 180 days.  That period is extended to 300 days in deferral jurisdictions such as New Hampshire if the plaintiff "'has initially instituted proceedings with [an authorized] State or local agency.'"  Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999) (quoting 42 U.S.C. § 2000e-5(e)) (alteration in original).  Miller filed a charge with the New Hampshire Human Rights Commission on March 19, 1999.  The charge was received by the EEOC for federal filing purposes on March 22, 1999.

was not entitled to the benefits of the continuing violation doctrine.

The Supreme Court's recent decision in Morgan clarified when a Title VII plaintiff may present claims based on actions that occurred outside the 300-day limitations period. Morgan held that a plaintiff seeking to recover for a discrete act of discrimination -- as opposed to a pattern of harassing conduct that, taken as a whole, constitutes a hostile work environment -- must file a charge with the EEOC within 300 days "of the date of the act or lose the ability to recover for it." 122 S. Ct. at 2071-72. The Court stated explicitly that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 2072. It cited acts such as termination, failure to promote, denial of transfer, or refusal to hire as examples of discrete acts that are easy to identify and thus should be acted on promptly. Id. at 2073. Under Morgan, it is clear that the 1995 transfer is a discrete act and is time barred.

The same is true for the 1996 letter of warning and performance evaluation. Relying on our decision in Thomas v. Eastman Kodak Co., 183 F.3d 38 (1st Cir. 1999), Miller argues that the statute of limitations did not begin to run on those events until 1999, when he was denied the PPO position. It was only then, he insists, that the "tangible effects" of the earlier letter of warning and evaluation became apparent to him. Id. at 50.

Thomas was concerned with identifying the date on which a Title VII claim accrues -- an issue left open in Morgan, 122 S. Ct. at 2073 n.7. However, focusing on the question of accrual does not help Miller here. As the district court pointed out, Miller himself described the 1996 letter of warning as "formal discipline" that represented a tangible injury. Consistent with that understanding, Miller promptly appealed the letter of warning through the DOC's internal review procedures. In a memorandum to the commissioner of the DOC, he wrote, "I feel abused and retaliated against," and demanded that the letter of warning be removed from his file and that a new evaluation be issued "that is consistent with my performance." That recognition eliminates any argument that the warning and evaluation did not "have any crystallized implications or apparent tangible effects" at the time they were issued. Thomas, 183 F.3d at 55. We conclude that Miller's claims regarding the letter of warning and performance evaluation accrued in 1996 and, as such, are now barred by the statute of limitations.

**Affirmed**.