Juan R. RODRIGUEZ, Plaintiff,

v.

John POTTER, Postmaster General, Defendant.

No. CIV.05–1179 (JAF).

United States District Court, D. Puerto Rico.

Feb. 15, 2006.

Juan R. Rodriguez, Carolina, PR, pro se.

Fidel A. Sevillano–Del–Rio, United States Attorney's Office, San Juan, PR, for Defendant.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiff, Juan Rodríguez ("Plaintiff"), filed the present action against Defendant, John E. Potter, Jr., in his official capacity as Postmaster General of the United States of America, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17 (1994 & Supp.2005) and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1994 & Supp.2005), and Plaintiff's constitutional rights under the Fifth Amendment, *U.S. CONST. AMEND. V. Docket Document No. 1.* Defendant[1] moves for summary judgment, claiming that: (1) Plaintiff's Fifth Amendment claim should be dismissed because Title VII and the ADEA provide for exclusive remedies; (2) Plaintiff failed to exhaust his administrative remedies; (3) Plaintiff cannot establish that he was subject to an adverse employment action or treated less favorably than other similarly-situated employees; and (4) Defendant is able to rebut any inference of discrimination with legitimate, non-discriminatory reasons for its actions. *Docket Document Nos. 11, 13.* Defendant's motion for summary judgment is unopposed.

### I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from Defendant's unopposed statement of facts, which itself relies heavily on the Equal Employment Opportunities file ("EEO file"), attached to Defendant's motion. *Docket Document 12.*

Plaintiff is a United States Postal Service ("Postal Service") employee. Plaintiff was born on March 13, 1946, and identifies his race as black. During all times relevant to the complaint, Plaintiff worked as Supervisor of Customer Services at the Roberto Clemente Post Office, located in Carolina, Puerto Rico ("the Plaza Carolina Post Office").

In 2002 and 2003, the Postal Service conducted performance evaluations and assessments to determine whether the Plaza Carolina Post Office was operating at a satisfactory level, and whether the customers' needs were being met. After four evaluations, the Plaza Carolina Post Office was found to be performing poorly and failing to satisfy its customers.

As a result of the negative evaluations, Pablo Alvarez Jr., the Postmaster of the Plaza Carolina Post Office ("Postmaster Alvarez"), met with Plaintiff on June 6,

---

**1.** For clarity purposes, "Defendant" will refer to the U.S. Postal Service, as John E. Potter, Jr., the named defendant to this action, is sued in his official capacity and is not personally implicated in any way.

2003, to address the operational failures that were occurring under Plaintiff's supervision.

On June 10, 2003, Plaintiff received two formal warning letters, respectively dated June 8 and 9, 2003, for unsatisfactory performance. The June 8 letter addressed Plaintiff's poor supervision with respect to improving customer service. The June 9 letter addressed Plaintiff's poor supervision with respect to ensuring that Express Mail was processed expediently. Both letters stated that future deficiencies would "result in more severe disciplinary action .... Such action may include suspension, reduction in grade and/or pay, or removal from the Postal Service."

On June 21, 2003, a mail carrier, Carrier Douglas González, requested to leave work early under a Postal Service employment rule, ("the 7.01 rule"), which states: "a city letter carrier who actually works more than seven hours but less than eight hours of a regular scheduled day and who is officially excused from the completion of the eight-hour tour is credited with eight hours of work time for pay purposes." U.S. POSTAL SERVICE EMPLOYEE AND LABOR RELATIONS MANUAL, § 432.53. Plaintiff granted Carrier González permission to leave work under the 7.01 rule, despite the fact that there remained unfinished work for which Carrier González would have been responsible.

On June 23, 2003, Postmaster Alvarez reviewed the Postal Service's work monitoring system reports for June 21, 2003, and noticed that Carrier González had failed to complete his mail route but received work leave under the 7.01 rule. Postmaster Alvarez instructed Plaintiff to take the necessary corrective action against Carrier González.

On July 1, 2003, Plaintiff, in attempted compliance with Postmaster Alvarez' instructions, issued a notice to Carrier González admonishing him for his early leave on June 21, 2003, and suspending him from work for seven days.

Under the collective bargaining agreement ("CBA") effective for Carrier González' employment, Plaintiff's disciplinary action against Carrier González was defective. According to the CBA, Carrier González should have merely been issued a so-called "paper suspension," by which his suspension would have been considered already served and would not be accompanied by a loss of pay. Carrier González' suspension was subsequently reduced to a non-disciplinary formal discussion.

On July 21, 2003, Postmaster Alvarez met with Plaintiff to discuss Plaintiff's handling of the rule 7.01 incident. Postmaster Alvarez allegedly told Plaintiff that his job security was in jeopardy due to his poor work performance.

On July 28, 2003, Postmaster Alvarez issued a third warning letter to Plaintiff, regarding: (1) Plaintiff's failure to provide supervision to ensure that carriers are performing productively and consistently; and (2) Plaintiff's defective disciplining of Carrier González. Despite the warnings contained in the two earlier letters, the third warning letter was not accompanied by a more severe disciplinary action, such as suspension, pay/grade reduction or termination.

On September 2, 2003, Plaintiff filed for pre-complaint counseling the first step in initiating a formal complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged that he was discriminated against because he is black. *Docket Document No. 12, Exh. A, p. 72.* Plaintiff described the incident of discrimination as follows:

> On July 28, 2003, [the Postmaster] called me to his office and presented to me a

letter of warning. He had given me two letters of warning in the same day, before, on June 10, 2003. I told him that I was not signing the present one. Then he told me: "Yes, you are going to sign it and put a date on it." I still told him that I was not going to sign it. Then he got closer in front of me and pointing his finger at me, he said: "you do or I am going to give you a worst [sic] one." *Id.* As evidence that his treatment was race-motivated, Plaintiff stated that another supervisor—one of " 'clear complexion' has made similar mistakes as the Postmaster alleges I had. And he ... has not get any disciplinary action as I have [sic]." *Id., p. 73.*

On February 11, 2004, Plaintiff submitted a formal EEO complaint for investigation.

On April 1, 2004, Plaintiff submitted a letter to the Manager of EEO Compliance and Appeals, requesting that his claim be amended to reflect the fact that he was discriminated against on the basis of age. Accordingly, Plaintiff was notified that the allegation accepted by the EEOC for investigation would read: "You allege you were discriminated against based upon your color (Black) and age (57, DOB 03/13/46) when you were issued a Letter of Warning (LOW) dated July 25, 2003." *Docket Document No. 12, Exh. A, p. 76.*

On November 2, 2004, an Administrative Judge at the EEOC issued a judgment based upon a motion, filed by Defendant, for a Decision Without a Hearing. *Id., p. 104.* The issue put before the Administrative Judge read: "Did the Agency discriminate against the Complainant on the basis of his race and/or age in violation of Title VII and/or the ADEA when he was issued a Letter of Warning?" *Id., p. 107.* Plaintiff did not reply to Defendant's motion, and the Administrative Judge granted judgment in Defendant's favor.

On November 9, 2004, Defendant was notified that the EEOC made a finding of "no discrimination" on the basis of Plaintiff's race and age for the issuance of the July 25, 2003, warning letter.

On February 11, 2005, Plaintiff filed the present action. *Docket Document No. 1.*

On December 21, 2005, Defendant moved to dismiss or, in the alternative, for summary judgment. *Docket Document No. 11.*

## II.

### *Applicable Legal Standards*

**A. *Motion for Summary Judgment Standard under Rule 56(c)***

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact, though the burden "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and

(2) an ultimate burden of persuasion that always remains on the moving party. *Id.* at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella,* 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

### B. The McDonnell Douglas Analytical Framework

Title VII of the Civil Rights Act of 1964 provides that it shall be illegal to discriminate against any individual based on "[her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The ADEA makes it unlawful for an employer to discharge any individual or otherwise discriminate against him on the basis of her age. 29 U.S.C. § 623(a)(1).

■ In the absence of direct evidence or a "smoking gun" demonstrating that the employer's bias against his employee's sex or race motivated his actions, the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provides the legal framework with which to analyze discrimination claims under Title VII and the ADEA. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 505–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 420 (1 st Cir.1996) (stating that "[a]bsent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove her case by resort to a burden-shifting framework."); *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 429 (1st Cir.2000) (applying the direct evidence rule and the *McDonnell Douglas* burden-shifting framework to ADEA claims).

■ The *McDonnell Douglas* framework requires that a plaintiff establish a prima-facie case by demonstrating that: (1) she was within a protected class (for an ADEA claim, over the age of forty); (2) she met the employer's legitimate performance expectations; (3) she experienced an adverse employment decision by her employer; and, for ADEA claims, (4) "the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills." *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991). Once the plaintiff establishes a prima facie case, the presumption arises that the employer unlawfully discriminated against her. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68–69 (1st Cir.2002); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478 (1st Cir.1993); *Straughn,* 250 F.3d at 33. The burden of production then shifts back to the employer-defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir.2000).

■ If the employer meets this burden, the inference of unlawful discrimination is dispelled, and the burden shifts to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination. *Id.; Mesnick,* 950 F.2d at 823; *Straughn,* 250 F.3d at 34. At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. *See Hazen Paper v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d

338 (1993); *Mesnick*, 950 F.2d at 825; *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir.2000). Throughout this analysis, the plaintiff must prove that she would not have suffered the adverse employment action but for her membership in a protected class. *See Freeman v. Package Mach.*, 865 F.2d 1331, 1335 (1st Cir.1988).

## III.

### *Analysis*

Defendant argues that summary judgment should be awarded in its favor because: (1) Plaintiff failed to timely exhaust his administrative remedies; (2) Plaintiff has failed to set forth a prima facie case of discrimination or hostile work environment; and (3) Defendant has established a legitimate, non-discriminatory reason for its actions. Defendant also argues that Plaintiff's constitutional claims are incompatible with his ADEA and Title VII claims, as both the ADEA and Title VII provide exclusive remedies with respect to employment discrimination claims. *Docket Document No. 13.* We will address each argument below.

### A. *Constitutional Claims*

Plaintiff brings claims under the Fifth Amendment of the United States Constitution. *Docket Document No. 1.* As Defendant correctly notes, the ADEA and Title VII are among the statutes Congress has created to offer exclusive remedies for discrimination in employment. *Tapia–Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir. 2003) (holding that claimant's constitutional claims, to the extent that they are a mere restatement of ADEA claims, are non-justiciable because "[t]he ADEA provides the exclusive federal remedy for age discrimination in employment"); *Rivera–Rosario v. U.S. Dep't of Agric.*, 151 F.3d 34, 38 (1st Cir.1998) ("[W]here the grava-men of the complaint is Title VII discrimination, the only remedy available is under Title VII."). As Plaintiff fails to articulate a basis for his constitutional claims independent of the employment discrimination allegations that also give rise to his Title VII and ADEA claims, the constitutional claims are dismissed. *Docket Document No. 1.*

### B. *Exhaustion of Administrative Remedies*

Defendant argues that Plaintiff has failed to exhaust his administrative remedies with regard to his claims based upon the June 8 and 9 warning letters and a hostile work environment. *Docket Document No. 13.* Defendant points out that Plaintiff's EEO complaint was based only upon Postmaster Alvarez' transmission of the July 25 warning letter, not the earlier two letters. *Id., Docket Document No. 12, Exh. A, p. 76.* Because both Title VII and the ADEA require administrative remedy exhaustion, and neither the June 8 and 9 letters nor the hostile work environment claim were put forward in the EEO complaint, Defendant argues that these claims are not cognizable in federal court and are, in any event, time-barred. *Id.*

### 1. *June 8 & 9 Warning Letters*

Under the ADEA, "a federal employee may pursue an age discrimination claim by filing a charge of discrimination with the EEOC, and, after an appropriate interval, filing a civil action in a federal district court ... [or, in] the alternative, a federal employee may provide timely written notice to the EEOC of his intent to sue, wait for a stipulated interval (thirty days) to elapse, and then commence a civil action." *Tapia–Tapia*, 322 F.3d at 744 (citing 29 U.S.C. § 633a(b),(c),(d)).

Title VII's exhaustion requirements are no less rigorous. *Morales–Vallellanes v. Potter*, 339 F.3d 9, 18 (1st Cir.2003) ("Judicial recourse under Title VII . . . is not a remedy of first resort."); *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir.1990) ("Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court.").

■ In order to claim relief for discrimination related to the June 8 and 9 warning letters, Plaintiff would have had to initiate contact with an EEOC counselor within forty-five days—by July 23 and 24, 2003, respectively. *See Velazquez–Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir.2000); *Roman–Martinez v. Runyon*, 100 F.3d 213, 216–17 (1st Cir.1996) (citing 29 C.F.R. § 1613.214 (1995)). Because Plaintiff did not initiate contact until September 2, 2003, claims relating to the June 8 and 9 warning letters would have been untimely even had they been listed as grievances in Plaintiff's complaint, which they were not.

### 2. *Hostile Work Environment*

■ While the June 8 and 9 warning letters are not actionable as discrete acts of discrimination, they could be considered for the purpose of construing liability if they form part of an actionable hostile work environment claim. *Compare Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.") *with Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir.2002) (Hostile work environment claims "do not turn on single acts but on an aggregation of hostile acts extending over a period of time."). "Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117, 122 S.Ct. 2061.

■ Defendant argues that Plaintiff failed to exhaust his administrative remedies with regards to the hostile work environment claim. *Docket Document No. 13.* We agree. Plaintiff's EEO complaint focused exclusively on the issuance of the July 25, 2003, warning letter. After submitting his complaint and a request to amend the complaint to include age discrimination charges, Plaintiff was clearly notified that the "the allegation for investigation will read as follows: 'You allege you were discriminated against based upon your color (Black) and age (57 DOB 03/13/46) when you were issued a Letter of Warning (LOW) dated July 25, 2003.'" *Docket Document No. 12, Exh. A, p. 76.*

Because Plaintiff did not seek administrative remedy for the hostile work environment claim, nor for the issuance of the June 8 and 9 warning letters as discrete events, they are not actionable in federal court and must be dismissed. *See Velazquez–Rivera*, 234 F.3d at 795 (finding that "[b]y not bringing his age discrimination claim to the attention of the EEOC, [plaintiff] foreclosed the administrative investigation and ameliorative action contemplated by the exhaustion requirement," and district court's dismissal of claim was, therefore, appropriate).

### C. *Plaintiff's Prima Facie Case*

Defendant claims that Plaintiff has failed to submit evidence or allegation of an adverse employment action taken against him, and has, therefore, failed to put forth a prima facie case of discrimination. *Docket Document No. 13.* We have reviewed the record carefully, and agree.

■ In order to put forward a prima facie claim of employment discrimination,

Plaintiff must show that his employer "subjected him to an adverse employment action (e.g., an actual or constructive discharge) . . . ." *Cordero–Soto v. Island Finance, Inc.,* 418 F.3d 114, 119 (1st Cir. 2005). Assuming that Plaintiff's hostile work environment claim was cognizable, he would be able to recover for the claim only if he showed that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

■ Plaintiff was issued a formal warning letter on July 25, 2003 for inappropriately disciplining Carrier González. *Docket Document No. 12.* Although Plaintiff alleges that Postmaster Alvarez was irate and vaguely threatening during the issuance of the warning letter, the warning was not accompanied by any loss in pay or benefit, nor did it serve as precedent to a subsequent, more tangible adverse employment action. Neither the warning letter itself nor Postmaster Alvarez' allegedly angry issuance of the letter satisfy any standard articulated anywhere in the judicial canon for what might be considered an adverse employment action. *See, e.g., Noviello v. City of Boston,* 398 F.3d 76, 84 (1st Cir.2005) (subjecting an employee to a hostile work environment in retaliation for protected activity constitutes an adverse employment action); *De La Vega v. San Juan Star, Inc.,* 377 F.3d 111, 117 (1st Cir.2004)(holding that prima facie case under ADEA requires actual or constructive discharge); *Lee–Crespo v. Schering–Plough Del Caribe, Inc.,* 354 F.3d 34, 45 (1st Cir.2003)("To prove constructive discharge, a plaintiff must usually 'show that her working conditions were so difficult or unpleasant that a reason-

able person in [his] shoes would have felt compelled to resign.'"); *Miller v. N.H. Dep't of Corr.,* 296 F.3d 18, 22 (1st Cir. 2002); *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 55 (1st Cir.1999); (finding that negative evaluations are not ripe for adjudication as discriminatory absent any "crystallized implications or apparent tangible effects") (citing *Johnson v. Gen. Elec.,* 840 F.2d 132, 136–37 (1st Cir.1988)); *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (noting that taking something of consequence from an employee, including divesting her of significant responsibilities, constitutes an adverse employment action).

Because Plaintiff fails to assert that he suffered an adverse employment action, he is unable to demonstrate a prima facie case of discrimination under either the ADEA or Title VII. We need not proceed further with the burden-shifting analysis to conclude that Plaintiff's unlawful employment discrimination claims must be dismissed.

## D. *Defendant's Rebuttal*

■ Even assuming that Plaintiff is able to make a prima facie showing of employment discrimination, Defendant provides the sort of legitimate, non-discriminatory reason for the adverse employment action necessary to dispel any inference of discrimination. *Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir.2000). Defendant puts forward uncontested factual support for the proposition that the July 25, 2003 warning letter was issued because Plaintiff was deficient in his supervision over Carrier González. We are entirely convinced that Defendant's proffered reason for subjecting Plaintiff to an adverse employment action (assuming, arguendo, that a warning letter qualifies as such) is entirely plausible. *Ramirez Rodriguez v. Boehringer Ingel-*

*heim Pharm., Inc.,* 425 F.3d 67 (1st Cir. 2005).

As Plaintiff offers no argument to suggest that Defendant's justification is pretextual, Plaintiff's case does not pass muster at any stage of the *McDonnell Douglas* framework. The record is entirely empty of any hint of a discriminatory animus, or even an adverse employment action.

## IV.

### Conclusion

In accordance with the foregoing, we **GRANT** Defendant's motion for summary judgment. *Docket Document No. 11.* Plaintiff's Title VII and ADEA claims are **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**