**Alberto DOMÍNGUEZ–CRUZ and Nydia Negrón–Ramos, Plaintiffs, Appellants,**

v.

**SUTTLE CARIBE, INC., Defendant, Appellee.**

No. 98–2296.

United States Court of Appeals, First Circuit.

Heard Nov. 3, 1999.

Decided Feb. 2, 2000.

Harold D. Vicente–Colón, with whom Vicente & Cuebas was on brief, for appellants.

Graciela J. Belaval, with whom Martínez, Odell & Calabria was on brief, for appellee.

Before LYNCH, Circuit Judge, CAMPBELL, Senior Circuit Judge, and

O'TOOLE, District Judge.*

LYNCH, Circuit Judge.

In this age discrimination suit brought by a plant manager whose employment was terminated when he was 55 years old, the district court entered summary judgment for the defendant, Suttle Caribe, on the recommendation of the magistrate judge. Both judges found that the plaintiff, Alberto Domínguez–Cruz, made out a prima facie case of age discrimination under the familiar *McDonnell Douglas–Burdine–Hicks* framework. They determined, however, that he had not overcome Suttle Caribe's articulated non-discriminatory reason for the termination with evidence sufficient to permit a rational factfinder to conclude that the termination was motivated by age discrimination.

The record shows that the employer has, at different times, articulated to varied audiences different reasons for ending the plaintiff's employment. At times, Suttle Caribe has said that the termination was not an issue of performance but was instead the result of a business restructuring plan that involved the elimination of the plant manager position. At other times, Suttle Caribe has claimed that the termination was based on the plaintiff's job performance. At still other times, Suttle Caribe has said that violations of company policy and insubordination were the reasons for the termination. In addition to the potentially inconsistent reasons the company gave for the termination, notes of a conversation between a member of the personnel department and the key decisionmaker in the plaintiff's termination include—unusually and unfortunately for the company—the phrases "age descrim. [sic]" and "cover up." Finally, the key decisionmaker referred to the plaintiff more than once as an "old fart" in front of two younger employees who would eventually assume many of the plaintiff's job responsibilities. One of those younger employees in turn referred to the plaintiff as "el viejo" ("the old one" or "the old man") and told another employee at least a year before the plaintiff's termination that he had been offered the plaintiff's job. While the termination of the plaintiff's employment may prove to have been innocent of age discrimination, these facts are surely enough to raise genuine issues of material fact that should be left to the jury. We reverse entry of summary judgment and remand.

I

Alberto Domínguez–Cruz began working for Suttle Caribe on October 12, 1978. He was hired to set up and manage Suttle Caribe's plant in Humacao, Puerto Rico, and he continued in the position of plant manager until his termination on September 22, 1995. He was 55 years old at the time of his termination. Although his record was not spotless, all parties agree that Domínguez–Cruz performed his job well. He successfully launched and nurtured Suttle Caribe's Puerto Rico operations and received recognition for his efforts in the form of positive performance evaluations, merit pay increases, and commendations. In fact, his immediate supervisor agreed that the plaintiff's 1993 performance evaluation characterized him as "an outstanding employee and manager[,] in general terms." In addition, Domínguez–Cruz received a merit pay increase for 1995.

In 1994, upper management at Suttle Caribe's parent company, Suttle Apparatus, began a restructuring initiative, designed to reduce costs and standardize operations by putting the "right people in the right place." Domínguez–Cruz directed this initiative at Suttle Caribe and, as a result, was responsible for terminating the employment of a number of employees in 1994. Although the company now claims that the long-term plan had always been to eliminate the plant manager position, the plaintiff testified that he was not aware

---

* Of the District of Massachusetts, sitting by designation.

that the restructuring initiative might result in the loss of his job.

In September 1995, Dean Ovitt, Vice President of Manufacturing for Suttle Apparatus and Domínguez–Cruz's direct supervisor as of late 1992, and Jeffrey Berg, President of Suttle Apparatus, traveled to Puerto Rico to meet with Domínguez–Cruz and to assess Suttle Caribe's operations. During this time, Domínguez–Cruz had conversations with both Berg and Ovitt pertaining to his concerns with some of the proposed changes to the organizational chart. In addition, Berg and Ovitt discussed with Domínguez–Cruz some of their complaints regarding his handling of certain situations, including an accident involving a company vehicle, the awarding of a contract to an employee, and the filing of unemployment paperwork associated with an employee's leave of absence. On September 22, 1995, Ovitt, with the consent of Berg and Curtis Sampson, the Chief Executive Officer and President of the Board of Directors, informed Domínguez–Cruz that his employment was being terminated. Ovitt told Domínguez–Cruz that the plant manager position was being eliminated as a part of the organization's restructuring plan.

Domínguez–Cruz and his wife filed suit against Suttle Caribe in federal district court in May 1996, alleging age discrimination under both federal and Puerto Rican law and claiming violations of various other provisions of Puerto Rican law. They sought damages and a preliminary injunction reinstating Domínguez–Cruz to his position and enjoining Suttle Caribe from discriminating or taking any retaliatory action against Domínguez–Cruz. On September 23, 1997, Suttle Caribe filed for summary judgment, arguing that Domín-

guez–Cruz had failed to make out a prima facie case of age discrimination and that he had failed to rebut its proffered non-discriminatory reasons for the termination. The motion was referred to a magistrate judge, who recommended granting summary judgment to Suttle Caribe. The district court agreed, concluding that although Domínguez–Cruz had put forth a prima facie case of age discrimination, he had failed to rebut Suttle Caribe's non-discriminatory reasons for the dismissal. Summary judgment was entered for Suttle Caribe and supplemental jurisdiction over the Puerto Rican law claims was declined. Domínguez–Cruz appealed to this court.

**II**

Our review of the entry of summary judgment is de novo. *See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 47 (1st Cir. 1999).

■ The plaintiff offers two approaches to this case.[2] First, he says that the ageist statements allegedly made by Ovitt and another individual and the notes taken by a personnel manager in a meeting with Ovitt constitute "direct evidence" of age discrimination. Because he produced direct evidence sufficient to sustain his burden, Domínguez–Cruz says, summary judgment should have been denied without resort to the *McDonnell Douglas–Burdine–Hicks* burden-shifting framework. The district court rejected this argument, concluding that this evidence was not "direct evidence" but instead constituted "stray remarks" that failed to "tie [Domínguez–Cruz's] dismissal from Suttle to his age or to age discrimination."

■ Second, the plaintiff says that even under the *McDonnell Douglas–Burdine–Hicks* framework,[3] summary judgment

---

**2.** "We regard Title VII, ADEA, ERISA, and FLSA as standing *in pari passu* and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another." *Serapión v. Martínez,* 119 F.3d 982, 985 (1st Cir.1997). Thus, we sometimes refer to precedent developed in these other areas.

**3.** This framework applies to Age Discrimination in Employment Act (ADEA) cases under the law of this circuit. *See Mesnick v. General Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991).

was improper because he produced evidence from which a jury could infer that the employer's articulated reasons were pretextual and that age discrimination was the real reason for his termination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The district court rejected this argument, finding that the circumstantial evidence presented by the plaintiff was insufficient to carry the burden of establishing that "age-related animus motivated [his] dismissal."

■ When a plaintiff presents direct evidence of age discrimination, the defendant must then either "deny the validity or the sufficiency of the plaintiff's evidence," and "[have] the jury ... decide[ ] whether the plaintiff has proved discrimination by a preponderance of the evidence," 8 Lex K. Larson, *Employment Discrimination* § 136.02, at 136–6 (2d ed.1999), or "prove that it would have made the same decision even if it had not taken the protected characteristic into account," *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95–96 (1st Cir.1996), or both, if it chooses.[4] *See also Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). This burden makes it difficult, but not impossible, for defendants to obtain summary judgment. *See Cardona Jimenez v. Bancomercio de Puerto Rico,* 174 F.3d 36, 40 (1st Cir.1999); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.,* 152 F.3d 17, 24 (1st Cir.1998); *but see Ayala–Gerena,* 95 F.3d at 95–96 (referring to the defendant's obligation to "affirmatively prove that it would have made the same decision" in the summary judgment context).

It is often quite difficult to draw the line between what is "direct evidence" and what is "circumstantial evidence." *See, e.g., Fernandes v. Costa Bros. Masonry, Inc.,* 199 F.3d 572, 582–83 (1st Cir.1999) (noting that the First Circuit has yet to choose among different approaches to "direct evidence" and "circumstantial evidence" cases). "In many cases, the line between *McDonnell Douglas,* on the one hand, and *Price Waterhouse,* on the other hand, is blurred." *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 421 (1st Cir.1996). In fact, one might question whether these bright line articulations are so helpful in the end. *See, e.g.,* Deborah C. Malamud, *The Last Minuet: Disparate Treatment after Hicks,* 93 Mich. L.Rev. 2229, 2311 (1995) (suggesting that *McDonnell Douglas* does a poor job of shaping pre-trial decisionmaking, particularly at the summary judgment phase).

4. The 1991 Civil Rights Act modified this portion of the "direct evidence" scheme in Title VII cases by providing that, even if a defendant proves that it "would have taken the same action in the absence of the impermissible motivating factor," a court may still award declaratory relief, injunctive relief, and attorney's fees and costs where a plaintiff has shown that "race, color, religion, sex, or national origin was a motivating factor for [the] employment practice." 42 U.S.C. § 2000e–5(g)(2)(B); *id.* § 2000e–2(m); *see Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 259 n. 3 (1st Cir.1999); 8 Larson, *supra,* § 136.05, at 136–13. A court may not "award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment" in such cases. 42 U.S.C. § 2000e–5(g)(2)(B). There is some question as to whether this provision was meant to modify the *McDonnell Douglas–Burdine–Hicks* framework as well. *See Hicks,* 509 U.S. at 542, 113 S.Ct. 2742 (Souter, J., dissenting) ("Congress has taken no action to indicate that we were mistaken in *McDonnell Douglas* and *Burdine.*"); *Carey v. Mt. Desert Island Hosp.,* 156 F.3d 31, 44 (1st Cir.1998) (Stahl, J., dissenting). There is also some dispute as to whether this change should apply outside of the Title VII context. *See* 8 Larson, *supra,* § 136.05, at 136–13 (noting that the few federal courts that have been faced with the issue have held that the change does not apply in the ADEA context); *cf. Tanca v. Nordberg,* 98 F.3d 680, 684 (1st Cir. 1996) (concluding that the 1991 changes do not apply to "mixed motive" retaliation claims).

In appeals after trial, this and other courts have recognized the need for flexibility and have sometimes bypassed these approaches and instead looked at whether the totality of the evidence permits a finding of discrimination. *See F.W. Morse,* 76 F.3d at 421 ("Discretion is sometimes the better part of valor, and courts often wisely decide to sidestep difficult theoretical questions if answers to them are not essential to the proper resolution of a given case."); *see also Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158 (7th Cir.1996) ("The central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different ... age ... and everything else had remained the same."). In this case, we take this course, examining the totality of the evidence with the guidance of the *McDonnell Douglas–Burdine–Hicks* framework and reserving judgment on the "direct evidence" issue.

## A. McDonnell Douglas–Burdine–Hicks

Under this framework, the plaintiff must first make a prima facie showing of age discrimination. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. Because it is conceded for purposes of this appeal that Domínguez–Cruz established a prima facie case, we do not describe the required components.

Once the plaintiff has made out a prima facie case, a presumption that the employer unlawfully discriminated against the employee is created and the burden shifts to the employer to articulate a non-discriminatory reason for the dismissal. *See Hicks,* 509 U.S. at 506–07, 113 S.Ct. 2742. The defendant's burden at this stage is only a burden of production; the burden of proof remains with the plaintiff at all times. *See id.* If the defendant meets this burden, the presumption of discrimination created by the prima facie case drops away and the burden of production shifts back to the plaintiff to show that the employer's stated nondiscriminatory reason was a pretext for discrimination. *See id.* at 507–08, 113 S.Ct. 2742. At this final stage of the *McDonnell Douglas–Burdine–Hicks* framework, this burden "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *Thomas v. Sears, Roebuck & Co.,* 144 F.3d 31, 33 (1st Cir.1998) ("The plaintiff bears the 'burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.'" (quoting *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988))).[5]

Where, as here, the plaintiff has raised a prima facie case and the defendant has met the burden of production, the *McDonnell Douglas–Burdine–Hicks* framework becomes less relevant. *See Hicks,* 509 U.S. at 510, 113 S.Ct. 2742. At the summary judgment phase, "courts should not unduly complicate matters ... by applying legal rules which were devised to govern the basic allocation of burdens and order of proof." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991)

---

5. The plaintiff's burden at this stage is often seen as comprising two separate tasks. "The plaintiff must present sufficient evidence to show both that 'the employer's articulated reason for laying off the plaintiff is a pretext' and that 'the true reason is discriminatory.'" *Thomas,* 183 F.3d at 56 (quoting *Udo v. Tomes,* 54 F.3d 9, 13 (1st Cir.1995)). Defendant at oral argument suggested that plaintiff cannot rest on merely showing pretext but must also provide additional evidence of discrimination beyond the prima facie case. The defendant's argument is simply wrong, as we recently reiterated in *Thomas.* Evidence that makes out a prima facie case together with evidence of pretext can suffice to defeat summary judgment "provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.,* 181 F.3d 15, 22 n. 5 (1st Cir.1999); *see also Thomas,* 183 F.3d at 57. The introduction of additional evidence is not necessarily required. *See Dichner v. Liberty Travel,* 141 F.3d 24, 30 (1st Cir.1998).

(internal quotation marks and citations omitted). Instead, the focus should be on the ultimate issue: whether, viewing the "aggregate package of proof offered by the plaintiff" and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the termination of the plaintiff's employment was motivated by age discrimination. *Id.* at 824–25; *see Pages–Cahue v. Iberia Lineas Aereas de España*, 82 F.3d 533, 536 (1st Cir.1996); *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996); *Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 50 (1st Cir.1990).

■ We hold that there was evidence presented on summary judgment from which a jury could (although need not) infer that the employer's claimed reasons for terminating Domínguez–Cruz's employment were pretextual and that the decision was the result of discriminatory animus. First, the evidence put forth by the plaintiff in making his prima facie case clearly established that Dean Ovitt, who was the plaintiff's direct supervisor and twelve years younger than him, and Jeffrey Berg, who was two years younger than the plaintiff, made the decision to terminate the plaintiff, with Sampson's approval. After his termination, Domínguez–Cruz's job responsibilities were assumed by Ovitt, Mario Medina, Suttle Caribe's Operations Manager, Nilda Torres, Suttle Caribe's then Quality Control Supervisor, and Adalberto Sierra, Suttle Caribe's Personnel Manager. All four individuals are younger than Domínguez–Cruz (although Sierra only by one year). In fact, the evidence showed that Domínguez–Cruz was the oldest Suttle Caribe employee. In addition, while Suttle Caribe claims that Luis ("Tony") Hernández, the Costa Rica plant manager, did not assume any of the plaintiff's job responsibilities, there is evidence that Hernández, who is ten years younger than the plaintiff, oversees Medina and Sierra and was selected for this position "rather than" the plaintiff.

Second, and in addition to the evidence supporting Domínguez–Cruz's prima facie case, the defendant presented explanations for Domínguez–Cruz's termination that could be viewed as inconsistent. When Domínguez–Cruz was informed by Ovitt and Janice Wielke, a Suttle Apparatus personnel manager, that he was being dismissed, he was told that his position was being eliminated as a result of the restructuring plan. That same day, a memorandum from Ovitt was distributed to all employees, informing them that some "organizational changes" would be made as a part of the "restructuring of the organization." Ovitt's notes made shortly before the plaintiff was informed of the decision support the restructuring explanation: "This reorganization is not a performance issue. This was a difficult decision of restructuring the company to combine operation resourses [sic] and better utilize resourses [sic] available." When Domínguez–Cruz contacted Sampson for an explanation, he received a letter stating that Hernández had been selected "rather than" himself to sit on the committee that would oversee Suttle Caribe operations. When the plaintiff met with Sampson a week or so later, Sampson told him that while there had been some complaints about his performance, they were "not important."

However, in its answer to Domínguez–Cruz's complaint, Suttle Caribe changed its reasons for the termination of plaintiff's employment. It denied that the plaintiff was discharged as a result of restructuring, instead claiming that "Plaintiff was terminated for his repeated failure to abide by company policies and to commit to the team efforts as required." At another point in the answer, Suttle Caribe stated that the plaintiff's termination "was determined exclusively because of his violations to [sic] company policies" and referred to his "inability to commit to the managerial efforts directed by the parent corporation, covering up employee misconduct which required termination, and his failure to abide by previous commitments

to his immediate supervisor with respect to team work and reorg[an]ization."

The depositions betray a similar inability to settle on an explanation for Domínguez–Cruz's dismissal. At one point, Ovitt stated that "[t]he reason that he was terminated was because of his performance, it was performance issues." At another point, Ovitt acknowledged that he told "the employees of the corporation, other than the executive staff," that the dismissal was not related to performance. Later, he indicated that the plaintiff was fired because of "his refusal to take the direction that the company was going" and his insubordination. Finally, Ovitt referred to Domínguez–Cruz's failure to abide by company policies. Sampson, in contrast, stated in his deposition that Domínguez–Cruz was doing a "good job" and was "very adequate" and that "[t]he primary reason for termination was always that they wanted to eliminate the position, they didn't think it was necessary any more."

 A company may have several legitimate reasons to dismiss an employee. But when a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."), *opinion amended by* 97 F.3d 833 (6th Cir.1996); *Kobrin v. University of Minnesota*, 34 F.3d 698, 703 (8th Cir.1994) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext."); *Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1422 (7th Cir.1992) ("A jury's conclusion that an employer's reasons were pretextual can be supported by inconsistencies in or the unconvincing nature of the decisionmaker's testimony."); *Alvarado v. Board of Trustees*, 928 F.2d 118, 122–23 (4th Cir.1991); *Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132–33 (2d Cir.1987). A jury could, at trial, accept

the employer's explanation that it initially chose not to discuss the plaintiff's performance issues publicly out of a desire to avoid humiliating him. This explanation, however, does not fully explain its failure to mention these issues to Domínguez–Cruz when he inquired as to the reasons for his dismissal. At the summary judgment stage, viewing the evidence as a whole and given that the court should not engage in credibility assessments, *see Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 26 (1st Cir.1998), the evidence in this case can support an inference of pretext.

Third, and further supporting a possible inference that Suttle Caribe's explanations are pretextual, there is evidence suggesting that restructuring was not the reason for the termination of the plaintiff's employment. First, there is evidence that, in 1994 or earlier, Ovitt had offered the plant manager position to Medina. Medina told another employee that he was considering taking the offer. Second, the plaintiff had no prior notice that the company was considering eliminating the plant manager position, even though he was integrally involved in the restructuring efforts at Suttle Caribe. Third, while Suttle Caribe maintains that the plan had always been to eliminate the plant manager positions in both Puerto Rico and Costa Rica, the position in Costa Rica had not, as of the time of the depositions, been eliminated.

The performance explanation also suffers from some deficiencies. At least one of the alleged violations of company policy upon which Suttle Caribe relies occurred approximately two years before Domínguez–Cruz was dismissed, and his 1993 evaluation, at roughly the same time, called him an outstanding employee. And there is at least some question whether Domínguez–Cruz was directly responsible for two of the alleged violations. Further, the fact that the other employees involved in some of these violations were not terminated may cast doubt on the veracity of

this explanation. Finally, Domínguez–Cruz's record at the company may undermine the performance explanation. He had a strong record with the company, received a positive performance evaluation in 1993, was given a letter of commendation from Berg in August of 1994, and received a merit pay increase in 1995. A jury could conclude that the alleged performance problems only arose once the plaintiff came under Ovitt's supervision; Ovitt terminated the plaintiff within three years of becoming his supervisor.

■ Finally, evidence of age-related comments could support an inference of pretext and discriminatory animus.[6] The record reflects that Ovitt—the plaintiff's direct supervisor and the key decisionmaker regarding his termination—referred to the plaintiff, more than once, as an "old fart" in front of other employees, including Medina and Sierra. Medina, in turn, was heard by another employee referring to Domínguez–Cruz as "el viejo" ("the old one" or "the old man") in the course of saying that he had been offered Domínguez–Cruz's job.

In addition, there are the notes made by Wielke, the personnel manager. Wielke, in some way, participated in the dismissal and flew to Puerto Rico with Ovitt to inform plaintiff that his employment was terminated. Her notes about the decision to terminate the plaintiff contain his full name and include the phrases "cover up so Alberto doesn't," "all over 40," "Tony—age," and "age descrim. [sic]." Perhaps the discussion memorialized in these notes was about how to comply with the law, but, if so, the "cover up" language is an odd

choice. These notes, as well as the remarks made by the key decisionmaker and another employee, could lead a reasonable jury to infer that age discrimination was at work.[7]

This recitation of the facts has taken the evidence in the light most favorable to the plaintiff. *See Levy v. Federal Deposit Ins. Corp.*, 7 F.3d 1054, 1056 (1st Cir.1993). It is not a description of what the jury must find, but is rather a description of the permissible inferences that could be drawn from the facts and that suffice to defeat summary judgment. "The plaintiff does not have to prove by a preponderance of the additional evidence that discrimination was in fact the motive for the action taken. All a plaintiff has to do is raise a genuine issue of fact as to whether discrimination motivated the adverse employment action." *Olivera*, 922 F.2d at 50. We find that Domínguez–Cruz has done so and should be allowed to take his claims to a jury. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir.1998) ("[W]here a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." (citation omitted)); *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and noting that "determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury" (internal quotation marks and citation omitted)); *see also Brennan*, 150 F.3d at 30 (revers-

---

6. The district court dismissed many of these comments as "stray remarks" not connected to the employment action at issue. It is true that the weight of such remarks "is circumscribed if they were made in a situation temporally remote from the date of the employment decision or if they were not related to the employment decision in question or were made by nondecisionmakers." *McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 301 (1st Cir. 1998). But some of these comments were

made by the key decisionmaker and others were recorded during the decisionmaking process. All of these comments, with their varying levels of relevance, can properly be considered at the summary judgment stage under the *McDonnell Douglas–Burdine–Hicks* framework.

7. Although plaintiff produced some "statistical" evidence of age discrimination, consideration of it is not necessary to our decision.

ing directed verdict entered for defendant in ADEA case); *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1092 (1st Cir.1995) (reversing summary judgment for defendant in ADEA case).

## B. Direct Evidence

We defer any decision as to whether plaintiff has produced direct evidence of discrimination in light of our holding. Should such a decision prove material it would be better made after the development of the evidence. *See, e.g.*, W. Carl Jordan, *Employment Discrimination Law* 223 (1998 Supp.); *see also Fernandes*, 199 F.3d at 581 (noting that a plaintiff "may elect to proceed simultaneously on both fronts" and that "the trial court, at an appropriate stage of the litigation, will channel the case into one format or the other"). It is true the alleged comments were about the plaintiff—not other people—and most were purportedly made by those involved in the termination. The comments in Wielke's notes have to do with terminating the plaintiff's employment and are contemporaneous with the termination decision. However, the summary judgment record gives little context to the remarks and comments. There is, for example, no explanation from the personnel manager about what her notes meant. Nor is there any evidence from the plaintiff or the two subordinates concerning the context in which Ovitt made his lamentable comments. Hence it would be premature for us to categorize this evidence now, both because the district court will be better able to do so on a more complete record, and because whether or not there will be any practical need to do so for purposes of deciding this case is not yet apparent.

The decision of the district court is *reversed*. We remand for proceedings consistent with this opinion.

So ordered.