Haggertv, S. Jane, J.
This is an action brought by the plaintiff, Venyamin Pinsky (“Pinsky”). alleging employment discrimination based on age and national origin against the defendants, the University of Massachusetts (“UMass”), and Dr. Susan Skea (“Skea”). Pinsky asserts that the unlawful discrimination resulted in his being fired from his position as a staff psychiatrist at Bridgewater State Hospital (“Bridgewa-ter”). The matter is before this court on a motion for summary judgment brought by UMass and Skea.
For the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED.

BACKGROUND

This dispute arises as the result of the defendants’ decision to fire Pinsky from his staff psychiatrist position at Bridgewater in May of 1999. At this summary judgment stage, the facts are reported in the light most favorable to the plaintiff. Anderson Street Associates v. City of Boston, 442 Mass. 812, 816 (2004), citing Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
Pinsky was originally hired as a staff psychiatrist at Bridgewater in 1979. When UMass took over the mental health program at Bridgewater in September 1998, Pinsky remained at the hospital. He was working, part-time, as a staff psychiatrist, and was under a contract that the University entered with Correctional Medical Services (“CMS”) until June 30, 1999. The program was supervised by the Director of the University’s Correctional Mental Health Program, Dr. Kenneth Applebaum (“Applebaum”). Skea’s duties at Bridgewater included supervising all of the psychiatrists, including Pinsky. At the time he was fired, Pinsky was approximately sixty-four years old. He is of Russian descent and speaks with a Russian accent.
In September of 1998, Skea and Applebaum conducted a review of the existing psychiatric program at Bridgewater. In the process of observing and interacting with Pinsky between October 1998, and June 1999, Skea questioned Pinsky as to why he prescribed medication at high doses in his unit. Pinsky responded that he needed “megadoses” because the patients were not responding to lower doses. Pinsky’s prescription practices were monitored by the State Office of Pharmacy Services, through its Director of Pharmacy Services, Mr. Dean Najarían (“Najarían”). Najarían conducted a “unit comparison” in monitoring the medication doses for all of the patients at Bridgewater. Pinsky testified regarding two schools of thought on giving increased doses to patients, and stated that he believes that those patients with long-standing diseases who have not responded to average doses could *457 only be improved by a combination of medications given in high doses. Pinsky also testified regarding Skea’s concerns with his illegible notes. He stated that Skea told him in a meeting that his writing was “very poor.”
Pinsky alleges that certain disparaging remarks illustrate that he was the victim of both age and national origin discrimination. At one point Skea introduced Pinsky to a newly hired psychiatrists and said, “he is even older than you.” Further, Skea allegedly repeated a word that Pinsky said and laughed at the way he pronounced it, and “ironically smiled” when he was speaking. Pinsky stated that Skea also commented to the Unit Director, Muriel Ericson (“Ericson”) that she would get help in the form of good psychiatrists in the future, allegedly implying her bias against Pinsky.
Skea and Applebaum informed Pinsky of the UMass’ decision to not offer him a new contract. Pinsky sent a letter to Applebaum on July 26, 1999, in which he stated that he recognized that he and Skea “had some differences of opinion this winter.” UMass hired Dr. Tenenbaum (“Tenenbaum”) to take over Pinsky’s unit. Tenenbaum was fifty-seven years old when he was hired. In addition, two more psychiatrists who were older than Pinsky were hired. Dr. O’Connor (“O’Connor”) was sevenly-five at the time he was hired, while Dr. Fortin (“Fortin”) was sixty-six. Additional psychiatrists were also hired at this point.
Pinsky filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) in August of 1999, pursuant to G.L.c. 151B. The MCAD complaint was filed against UMass alleging age and national origin discrimination.

DISCUSSION

Summary judgment is appropriate where the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Highland Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997), citing Mass.R.Civ.P. 56(c). In a case such as this, where the opposing party will have the burden of proof at trial, the moving party is entitled to summary judgment if it can demonstrate by reference to these materials, “unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Skea argues that the court does not have jurisdiction over the claims against her because she was not formally named in the MCAD complaint. A prerequisite to filing a complaint in Massachusetts Superior Court pursuant to G.L.c. 151B, is to timely file with the MCAD. Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994). The filing must occur within 300 days of the alleged discriminatory act. See G.L.c. 151, 5.[2] However, it has been held that “faced with the question, the Massachusetts Supreme Judicial Court would hold that failure to name a party as a respondent in a charge filed with the MCAD does not preclude a later civil action against that party if the conduct of the party was put at issue by the charge and the parly had notice of and an opportunity to conciliate the charge.” Chapin v. University of Massachusetts, 977 F.Sup. 72, 76 (D.Mass 1997), quoting Chatman v. Gentle Dental Center of Waltham et al., 973 F.Sup. 228, 235 (D.Mass 1997). The court concluded that the conduct of the unnamed party was put at issue in Chapin where the MCAD charge mentioned the party’s specific conduct in describing the allegations against the named defendant on the MCAD charge. Chapin, 977 F.Sup. at 76. Further, the court determined that the unnamed defendant had notice and an opportunity to conciliate the charge because of the defendant’s involvement in helping the named defendant respond to the MCAD charge. Id. at 77.
In this case, the plaintiffs MCAD complaint identifies Skea as Pinsky’s supervisor and specifically mentions her allegedly disparaging remarks concerning Pinsky’s age and national origin. In addition, Skea is identified in the MCAD complaint as the Medical Director at Bridgewater. For purposes of notice, Skea participated in responding to the allegations before the MCAD and was deposed in May 2002 as part of the discovery process. Accordingly, the fact that Skea was not specifically named in the MCAD complaint does not bar this court from exercising jurisdiction over Pinsky’s claims against her.[3]

A. Age Discrimination

Pursuant to G.L.c. 151B, a plaintiff who is terminated from employment can establish a prima facie case of discrimination by producing evidence that he is a member of a protected class under the statute, he performed his job at an acceptable level, he was terminated, and the employer sought to fill the position by hiring another individual with similar qualifications. Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 41 (2005). With regard to alleged discrimination based on age, the court has clarified the fourth element, stating that “discrimination may only logically be inferred when a plaintiff in the protected class, who is performing adequately, is terminated and replaced by someone who is ‘substantially younger.’ ” Knight v. Avon Products, Inc., 438 Mass. 413, 423 (2003), citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 n.7 (1981). The SJC established a line at five years for purposes of determining what was “substantially younger.” Knight 438 Mass, at 425.
In this case, Pinsky has established a prima facie case of age discrimination. Pinsky is a member of a protected class, he was terminated from employment, and he was replaced by Tenenbaum, who is seven *458 years younger than he. In addition, viewing the evidence in the light most favorable to the plaintiff, Pinsky performed his job at an acceptable level.
Once the plaintiff has satisfied the initial burden of establishing a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination “by articulating a legitimate, non-discriminatoiy reason for its hiring decision.” Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 440 (1995). This burden of production is not onerous, and it only requires a proposed reason and presentment of supporting facts to dispel the presumption of discrimination. Lewis v. Area Homecare for Senior Citizens, Inc., 397 Mass. 761, 766 (1986). The proposed justifications for the employment decision “may be unsound or even absurd, but if they are not discriminatory and if the plaintiff does not prove they are pretexts, the plaintiff cannot prevail.” Id. The defendants contend that the plaintiff was not offered a contract at Bridgewater for several reasons, including his practice of prescribing medication in excessive dosages, and his failure to keep legible documentation regarding medication he prescribed to his patients. Pinsky’s own testimony regarding his increased dosages given to his patients, in conjunction with the testimony of Skea and Applebaum, constitutes sufficient supporting facts to dispel the presumption of discrimination, and to shift the burden to the plaintiff to demonstrate that the offered reasons are pretextual.
Assuming a defendant satisfies their burden of production, “the presumption of discrimination vanishes, and the burden returns to the plaintiff to persuade the court, by a fair preponderance of the evidence, that the defendant’s proffered reason for its employment decision was not the real reason, but is a pretext for discrimination.” Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997), citing Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 444-45 (1995). In order to prevail, the plaintiff must provide sufficient evidence that would support a jury verdict “that it was more likely than not that the articulated reason was a pretext for actual discrimination.” Id. Such evidence must go beyond mere “isolated or ambiguous remarks” that tend to suggest animus based on age. Fontaine v. Ebtec Corp., 415 Mass. 309, 314 n.7 (1993).These types of remarks “are insufficient standing alone, to prove an employer’s discriminatory intent.” Id.
In Tardanico v. Aetna Life & Cas. Co., 41 Mass.App.Ct. 443, 450 (1996), the Appeals Court affirmed summary judgment for an employer who fired a fifty-seven-year-old employee, and hired a thirty-one-year-old replacement, to whom the employer paid $6,000 less in salary. The employee who had recommended the plaintiffs discharge had confronted the plaintiff and made statements that he “had been around a long time,” and that perhaps his “bag was getting too heavy.” Id. The Appeals Court held that the comments fell “well short” in proving that the employer’s stated reason for his discharge was pre-textual. Id.
The SJC’s holding in Blare, 419 Mass. 437, 447, illustrates the types of comments that are sufficient to survive summary judgment based upon a pretext argument. In Blare, a supervisor had asked the plaintiff directly, “Are you getting too old that you can’t handle two machines?” Id. at 439. Further, the supervisor told the plaintiff that few people retired from the company. Id. In addition to the comments, younger employees were not disciplined for the same types of problems at work that the plaintiff was fired for. Id. at 447.
In this case, Pinsky has not provided sufficient evidence to support a jury verdict that it was more likely than not that the defendants’ proffered reason for his dismissal was a pretext for age discrimination. Pinsky offers one isolated comment in which Skea joked about his age. He argues that this comment, in conjunction with the fact that Skea was ten years younger than he, and that a younger psychiatrist was hired to replace him, is sufficient for purposes of the summary judgment stage. This evidence clearly does not compare to the combination of comments and circumstances that the SJC relied on in Blare in denying summary judgment. Further, Pinsky’s assertion that Skea told a social worker not to worry, and that she would send help does not support an argument for age discrimination, and does not appear to even relate to age in any sense. Ultimately, Pinsky relies on the types of isolated and ambiguous remarks that the appellate courts have held insufficient to demonstrate pretext.
Pinsky argues that the comments made by Skea reflect direct evidence of discrimination, and that the three-pronged framework for a discrimination claim is not necessary. He relies on Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424,431 (IstCir. 2000), in arguing that the comments create a genuine issue of material fact. In Dominguez-Cruz, the plaintiffs supervisor repeatedly referred to the plaintiff as an “old fart,” and notes were discovered that were written by another employee. Id. at 433. The notes referred to a “cover up,” and “age descrim, [sic].” Id. The court stated that the notes could lead a reasonable jury to infer discrimination and an attempted cover-up. Id. In this case, Tenenbaum was fifty-seven when he was hired to replace Pinsky. In addition, other psychiatrists hired after Pinsky was fired were older than he. Clearly, while Pinsky relies on the fact that the comments in Dominguez-Cruz are similar to those in this case, there was significant additional evidence which the court relied on in denying summary judgment. Such evidence has not been provided by Pinsky in this case.

B. National Origin Discrimination

The same three-pronged framework and analysis discussed above, as articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 *459 (1973), applies to other types of discrimination in the Commonwealth, including those protections under Title VII at the federal level. See Wynn & Wynn, P.C. v. Massachusetts Com’n Against Discrimination, 431 Mass. 655, 665 (2000). Assuming arguendo that Pinsky can establish a prima facie case of national origin discrimination, and that the defendants can produce a legitimate, non-discriminatoiy reason for his dismissal, the burden again shifts to Pinsky to establish pretext. See Luna v. Harvard Community Health Plan, 54 Mass.App.Ct. 1101 (discussing three-step burden shifting analysis for national origin discrimination). As discussed above with regard to the claim of age discrimination, “isolated or ambiguous remarks” that tend to suggest animus are insufficient to show a discriminatory intent on the part of an employer. Fontaine v. Ebtec Corp., 415 Mass. 309, 314 n.7 (1993).
In this case, Pinsky asserts that Skea once repeated the word “sister” after he said it, and that she laughed. While he stated that other instances occurred in which she was laughing at his expense and was amused by his accent, he is unable to recall any other specific incidents. Further, Pinsky has not provided any evidence of other employees being treated differently based on their national origin. The speculative nature of the evidence, and Pinsky’s mere suspicion of Skea’s animus based on his national origin are clearly insufficient to demonstrate that the defendants’ preferred reasons for his dismissal were pretextual.

ORDER

For the foregoing reasons it is hereby ORDERED that the defendants’ motion for summary judgment be ALLOWED.

At the time of these alleged events, G.L.c. 15 IB, 5 provided for filing a complaint within six months of the alleged discriminatory act.

The defendants argue that the plaintiffs deposition that was taken in 1999 pursuant to the MCAD claim is inadmissible hearsay and does not meet the requirements of prior recorded testimony for purposes of admissibility. The court disagrees that an opportunity and similar motive to develop testimony was not made available to UMass at the time the deposition was taken. There may be additional reasons for excluding the deposition at a trial but those are not before me.