Carmen **CORDERO–IRIZARRY,**
**et al., Plaintiffs**

v.

**SEARS ROEBUCK OF PUERTO**
**RICO, INC., et al.,**
**Defendants.**

Civil No. 06–1796 (JP).

United States District Court,
D. Puerto Rico.

Dec. 18, 2007.

Juan F. Matos–Bonet, Esq., Matos–Bonet & Matos-de Juan, Luis N. Blanco–Matos, Esq., Matos, Robles & Blanco, San Juan, PR, for Plaintiffs.

Alfredo M. Hopgood–Jovet, Esq., Maggie Correa–Avilés, Esq., James D. Noel III, Esq., Sandra L. Negrón–Monge, Esq., McConnell Valdés, San Juan, PR, for Defendants.

**OPINION AND ORDER**

JAIME PIERAS, JR., Senior District Judge.

Before the Court is a motion for summary judgment (No. 44) filed by Defendants Consumer Programs Incorporated ("CPI") and Sears Roebuck de Puerto Rico, Inc., ("Sears"), as well as an opposition thereto (No. 60) filed by Plaintiff Carmen Cordero Irizarry ("Cordero").

Plaintiff Cordero filed in the instant suit claiming that she was fired from her position as a photo sales clerk at the Sears Photo Studio located in the Sears store at the Mayagüez Mall in Mayagüez, Puerto Rico, in violation of the Pregnancy Discrimination Act ("PDA") of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. section 2000e, and the Puerto Rico Act No. 3 of March 13, 1942, P.R. Laws Ann. tit. 29 section 469, *et seq.* ("Act 3"). Plaintiff likewise claims damages pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 section 5141. Specifically, Plaintiff Cordero alleges that on August 21, 2002, she was discharged from her employment due to her pregnancy, and that said discharge was related to the premature birth and subsequent death of her infant child.

Defendants argue that Plaintiff Cordero was fired for reasons unrelated to her pregnancy, including failure to comply with her assigned schedules, and failure to timely communicate to her supervisor about schedule change requests. Defendants further argue that this lawsuit, brought by Cordero nearly four years after the death of her child, is time-barred. Finally, Defendants argue that Defendant Sears should not be a party hereto, as Sears was not Cordero's employer.

For the reasons stated herein, the Court **GRANTS** Defendants' motion for summary judgment (**No. 44**).

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz,* 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989).

In a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman,* 985 F.2d at 1116.

## II. MATERIAL FACTS NOT IN GENU-INE ISSUE OR DISPUTE

The parties stipulated to the following facts at the Initial Scheduling Conference held on May 4, 2007.

1. Plaintiff Cordero is of legal age.

2. Plaintiff was a resident of Cabo Rojo, Puerto Rico during her employment with Defendant CPI.

3. Plaintiff Cordero started working for CPI in October 1999 as a photo sales clerk at the Sears Photo Studio located at the Sears store located in the Mayagüez Mall, Mayagüez, Puerto Rico.

4. Plaintiff Cordero's position was that of an "Associate."

5. At the time of Plaintiff Cordero's termination, her Manager Waldemar Ruiz ("Ruiz") was aware that Plaintiff was pregnant.

6. CPI terminated Plaintiff Cordero's employment on August 21, 2002.

7. At all times relevant to the Complaint, Plaintiff Cordero has never been an employee of Sears.

8. Plaintiff Cordero's paychecks are issued by CPI.

The following material facts are properly supported, and are not in genuine issue or dispute. The Court here exercises its authority under Rule 56(d) to designate these facts as established in this case.

a. At all times relevant to this case, CPI and Sears executed a License Agreement whereby Sears granted CPI permission to conduct and operate portrait photography studios at certain Sears locations. According to the terms of the Agreement, CPI has sole and exclusive control over its labor and employee relations.

b. On October 19, 1999, Plaintiff Cordero completed an application form for part-time employment at CPI's portrait studio located at the Sears store in the Mayagüez Mall in Mayagüez, Puerto Rico. In her application, Cordero indicated that she was available to work seven days a week.

c. Ruiz is the store manager for the CPI portrait studio located at the Sears store in the Mayagüez Mall, in Mayagüez, Puerto Rico.

d. Ruiz interviewed and hired Cordero for a position as an Associate at the CPI portrait studio located in the Mayagüez Mall.

e. At the time she was hired, Cordero was already a mother of two children.

f. In October 1999, Plaintiff Cordero started working for CPI as a part-time Associate at the CPI portrait studio located at the Sears store in Mayagüez Mall.

g. During her employment at CPI, Cordero was supervised by Ruiz.

h. As an Associate, Cordero was responsible for selling and taking portrait photography for CPI customers.

i. For the majority of 2002, four employees worked at the CPI portrait studio in Mayagüez Mall. Besides Ruiz, the store Manager, and Cordero, the other two employees that worked at the studio were Frank Ramos ("Ramos"), the Assistant Manager; and Frances Rivera, another part-time Associate.

j. As the Manager, Ruiz prepared the weekly work schedules for Cordero and the other CPI employees at the Mayagüez Mall portrait studio.

k. Ruiz posted the weekly work schedules one week in advance. The CPI portrait studio employees would review their schedules and inform

Ruiz if they had any conflicts with the assigned shifts.

l. Cordero knew that CPI customers had complained about her.

m. On March 21, 2000, Cordero received a "Corrective Action Form" after a customer complained that Cordero refused to attend to her without an appointment and then ignored her, causing the customer to leave the store. On a prior occasion, Ruiz had verbally notified Cordero that such conduct, which exhibited bad customer service, constituted a serious offense.

n. On April 22, 2001, Cordero received another "Corrective Action Form" for arriving late to her assigned work shift. As a result of Cordero's tardiness, CPI customers left the studio without having their portraits taken. Cordero was in agreement with the content of the "Corrective Action Form."

o. On April 23, 2002, Cordero was admonished after an incident in which she demonstrated poor attitude and bad customer service, including raising her voice to a CPI customer.

p. In or around late April of 2002, Cordero told Ramos and Ruiz that she was pregnant.

q. On Saturday, August 17, 2002, Cordero was scheduled to work from 2:00 p.m. to 6:00 p.m. On that Saturday, at 9:00 a.m., Cordero called Ruiz at the CPI portrait studio and told him that, because of a personal situation, she could only work until 4:00 p.m. At her deposition, Cordero could not recall the nature of the personal situation she had to attend to that day.

r. On that same Saturday, August 17, 2002, Cordero called the CPI portrait studio to verify her work schedule for the following week. This time Plaintiff spoke to Ramos, the studio's Assistant Manager, who told her that she was scheduled to work the next Wednesday, August 21, 2002, from 9:00 a.m. to 6:00 p.m. Cordero told Ramos that she could not work that Wednesday. Ramos responded that she had to notify Ruiz since all the Puerto Rico CPI Managers and Assistant Managers were scheduled to attend a meeting in Ponce on that day and she would be the only one working at the studio during that shift. Cordero did not notify Ruiz until Tuesday, August 20, 2002.

s. On Tuesday, August 20, 2002, Cordero was scheduled to work a shift beginning at 5:00 in the afternoon. During the morning of August 20, 2002, Cordero went to the CPI portrait studio and informed Ruiz, for the first time, that she could not work her assigned shift on the next day, August 21, 2002. Ruiz proceeded to inform her about the Managers' meeting in Ponce and Cordero replied that she would not work that shift. Ruiz explained to the Plaintiff that the schedule had been set up in order for Ramos and himself to attend the Managers' meeting. Cordero then told Ruiz: "[w]ell, I'm sorry. I cannot be here" and proceeded to leave the studio.

t. If either Cordero or the other Associate, Rivera, were absent for their scheduled shifts, either the Store Manager, Ruiz, or the Assistant Store Manager, Ramos, were left to attend the portrait studio alone.

u. Upon returning to the studio to begin her scheduled shift on the afternoon of August 21, 2002, Cordero received another written warning, "Corrective Action Form," for re-

questing last minute changes to her assigned work schedules on August 17 and August 21, 2002.

v. Ruiz allowed Cordero to review the "Corrective Action Form" and asked her to acknowledge receipt of the same by signing it. Cordero refused to do so. Ruiz proceeded to inform Cordero that she would be discharged if she did not sign the written warning and Cordero again refused to sign it. Ruiz then told Cordero that failure to sign the document against his orders constituted insubordination and informed her again she would be discharged from her employment at CPI. Nevertheless, Cordero again refused to sign the document.

w. On August 21, 2002, CPI terminated Cordero's employment.

x. During her deposition, Cordero testified that, other than the day of her dismissal, there was no other type of bad treatment towards her from Ruiz.

y. When Cordero asked Ruiz for changes to her assigned work schedule, he would comply with her requests, including after Cordero told Ruiz she was pregnant.

z. On September 18, 2002, Plaintiff filed a charge of pregnancy discrimination against CPI and Sears before the Anti–Discrimination Unit of the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission.

aa. During her deposition, when asked why she believed her pregnancy was the reason for her dismissal, Cordero initially answered that she "didn't know."

bb. Cordero went into labor on October 7, 2002, and she gave birth to a baby boy. The child passed away on October 10, 2002.

cc. At all times relevant to the case, CPI has been an employer insured by the State Insurance Fund Corporation.

dd. At all times relevant to the case, Cordero has never been an employee of Sears and Cordero's paychecks were always issued by CPI.

## III. *ANALYSIS*

### A. *DEFENDANT SEARS*

As a preliminary matter, the Court grants summary judgment as to Defendant Sears. The parties hereto do not dispute that Cordero was not an employee of Sears. At all times relevant to this complaint, CPI and Sears executed a License Agreement whereby Sears granted CPI permission to conduct and operate portrait photography studios at certain Sears locations. According to the terms of the Agreement, CPI has the sole and exclusive control over its labor and employee relations. Therefore, Sears is dismissed from this suit.

### B. *DISCRIMINATION ON THE BASIS OF PREGNANCY BY DEFENDANT CPI*

Plaintiff Cordero brought the instant suit alleging that her employer fired her based on her pregnancy. Title VII provides that it is unlawful for an employer to discharge an individual because of her sex. *See* 42 U.S.C. § 2000e–2 (a)(1). After the Supreme Court held that this phraseology did not proscribe discrimination on the basis of pregnancy, *see General Elec. Co. v. Gilbert*, 429 U.S. 125, 145–46, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), Congress enacted the Pregnancy Discrimination Act of 1978 ("PDA"), which provides as follows:

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by

pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work. 42 U.S.C. § 2000e(k).

■ A Title VII sex discrimination claim may be proven with direct evidence of discrimination, such as "an admission by the employer that it explicitly took actual or anticipated pregnancy into account in reaching an employment decision," *Smith v. Morse & Co.*, 76 F.3d 413, 421 (1st Cir.1996), or by circumstantial evidence, *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 428–29 (1st Cir.2000). When considering circumstantial evidence of sex discrimination, the Court applies the three-step burden shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). An employee alleging sex discrimination under Title VII must first establish a *prima facie* case by showing that: (1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person. *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000). If the plaintiff establishes a *prima facie* case of sex discrimination, the burden shifts to the defendant-employer to state a non-discriminatory reason for the adverse employment action. *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 31 (1st Cir.2003). The burden then shifts to the plaintiff to demonstrate that the defendant's stated reason is mere pretext for sex discrimination. *Id.* at 31.

As to whether Plaintiff Cordero has established her *prima facie* case, two of the four required elements are uncontested— she was pregnant, and an adverse action was taken against her by her employer when she was fired. Accordingly, the Court will focus its analysis on the remaining elements—whether Cordero's job performance was satisfactory, and whether CPI treated non-pregnant employees differently. The record reveals that, during her employment at CPI, Cordero received various verbal and written warnings regarding her treatment of CPI's customers, tardiness, and compliance with established schedules, the majority of which she received prior to her pregnancy. Specifically, on March 21, 2000, Cordero received a "Corrective Action Form" because a CPI customer complained about the service she provided, causing the customer to leave the store. On a prior occasion, Ruiz, her supervisor, verbally notified Cordero that such conduct constituted a serious offense. Subsequently, on April 22, 2001, Cordero received another disciplinary document because she showed up late for work, resulting in CPI customers not being able to have their portraits taken. Cordero was again reminded of the importance of providing excellent customer service in April of 2002, when she received another admonishment after she raised her voice to a CPI customer and the customer complained.

Finally, in August of 2002, Cordero again received a "Corrective Action Form" for failure to provide CPI with adequate notification of her inability to comply with the posted work schedules. It was her refusal to sign this "Corrective Action Form" that ultimately resulted in her dismissal. Specifically, as stated by Cordero in her deposition, Cordero was scheduled to work from 2:00 p.m. to 6:00 p.m. on Saturday, August 17, 2002. On that Saturday morning, Cordero called Ruiz at the CPI portrait studio and told him that, because of a personal situation, she could not arrive at work until 4:00 p.m. That same Saturday, Cordero called the studio to verify her work schedule for the upcoming week. She learned that she was

scheduled to work the following Wednesday, August 21, 2002, from 9:00 a.m. to 6:00 p.m. Cordero informed Ramos that she could not work that Wednesday. Ramos told Cordero she needed to contact Ruiz about the issue, since all the Puerto Rico CPI Managers and Assistant Managers were scheduled to attend a meeting in Ponce, Puerto Rico, on that day and she would be the only one in the studio. Cordero did not contact Ruiz until Tuesday, August 20, 2002, the day before her scheduled shift on Wednesday, August 21, 2002. Based on these two last minute schedule modifications, Ruiz composed a written warning, or "Corrective Action Form," for Cordero's signature. Cordero, however, refused to sign the Form. Ruiz twice warning her that failure to sign the Form would result in her termination. Nonetheless, Cordero was persistent in her refusal. She was subsequently fired.

■ After reviewing this uncontested evidence, the Court determines that Plaintiff Cordero has failed to establish her *prima facie* case because she did not show that her job performance was satisfactory.[1] Further, even if Plaintiff had established her *prima facie* case, based on Cordero's history of tardiness, non-compliance with assigned schedules, poor customer service, and insubordination to her supervisors, CPI has set forth a legitimate, non-discriminatory reason for dismissing Cordero. Finally, Plaintiff has not shown that CPI's conduct was pretext for sex discrimination. Thus, the Court grants summary judgment as to Plaintiff Cordero's PDA claim.

The Court likewise grants summary judgment as to Plaintiff Cordero's cause of action for pregnancy discrimination under Puerto Rico Law 3. The standard under Law 3 differs slightly from Title VII in that once a pregnant woman files suit indi-

cating that she was subject to dismissal, suspension, demotion, or salary reduction, a rebuttable presumption arises and the burden shifts to the employer to prove that its actions were justified. *Colon–Muriel v. Asociacion de Suscripcion Conjunta*, 499 F.Supp.2d 98, 112 (1st Cir.2007), citing *Rivera Aguila v. K–Mart de P.R.*, 23 P.R. Offic. Trans. 524, 123 D.P.R. 599, 610, 1989 Juris P.R. 42 (1989). Based on the uncontested evidence as set forth above, Defendant CPI has overcome the presumption and shown that the termination of Cordero was justified.

### C. *DAMAGES UNDER ARTICLE 1802 OF THE PUERTO RICO CIVIL CODE*

■ In addition to her claim for pregnancy discrimination, Plaintiff Cordero set forth a claim for damages under Article 1802 of the Civil Code of Puerto Rico, which allows for plaintiffs to recover damages in tort actions. In her claim, Cordero alleges that her discharge from CPI was the proximate cause of the death of her infant child. Defendant CPI argues that her Article 1802 claim is time barred.

Turning to the uncontested facts, CPI terminated Cordero's employment on August 21, 2002. On September 18, 2002, Cordero filed a charge before the Anti–Discrimination Unit of the Puerto Rico Department of Labor ("ADU") and the Equal Employment Opportunity Commission ("EEOC"). On October 7, 2002, Plaintiff delivered an infant who subsequently passed away on October 10, 2002. Nearly four years later, on August 16, 2006, Cordero filed the instant complaint against Defendants CPI and Sears.

The applicable statute of limitations for actions filed pursuant to Article 1802 is one year. P.R. Laws Ann. tit. 31 § 5141.

---

1. The Court need not go on to analyze the final remaining element of Cordero's *prima facie* claim, that CPI continued to have her

duties performed by a comparably qualified person.

Cordero's filing of the ADU and EEOC charge did not toll the statute of limitations under Article 1802. *See Leon–Nogueras v. University of Puerto Rico*, 964 F.Supp. 585, 589 (D.P.R.1997)(The "filing of an administrative charge will not toll the running of the statute of limitations for a tort action ... because the administrative agency had no jurisdiction over tort claims."). Thus, if measured from the date of Plaintiff's termination, August 21, 2002, or from the date upon which she filed her charge before the ADU and EEOC, September 18, 2002, the instant demand for damages, filed August 16, 2006, is indeed time-barred. The Court grants summary judgment as to Plaintiff's Article 1802 claim.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' motion for summary judgment on all claims, and will enter a separate judgment dismissing the instant complaint with prejudice.

**IT IS SO ORDERED.**